# CV 04 3081

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 2 1 2004 ★

BROOKLYN OFFICE

| | |
|---|---|
| Commodity Futures Trading Commission, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| TradeWins Publishing, Corp.; | ) |
| Stephen A. Schmidt; | ) COMPLAINT FOR INJUNCTIVE AND |
| Shri Krishna Investment Research Corp.; and | ) OTHER EQUITABLE RELIEF AND |
| Anand K. Inamdar. | ) FOR CIVIL PENALTIES UNDER |
| | ) THE COMMODITY EXCHANGE ACT |
| Defendants. | ) |

PLATT, J.

LINDSAY, M.J.

1.    Plaintiff, Commodity Futures Trading Commission ("Commission"), an

independent federal regulatory agency of the United States, brings this civil action for

violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2002),

and the Commission's regulations, 17 C.F.R. §§ 1 *et seq.* (2004), and for its complaint against

defendants TradeWins Publishing, Corp. ("TradeWins"), Stephen A. Schmidt, Anand K.

Inamdar, and Shri Krishna Investment Research Corp. ("SKIR") (collectively "the Defendants"),

alleges as follows:

### I. SUMMARY

2.    From approximately July 2002 until August 2003, Defendants Inamdar and

Schmidt, by and through their respective corporations SKIR and TradeWins, advertised and sold

the Natural Trigger Point System ("the System"). The System, a web-based members-only

trading system developed by Inamdar, provided on-line signals for the purchase and sale of

commodity futures contracts and options on futures contracts. The members-only portion of the

web site showed trades that Inamdar was purportedly making and that the members were urged

to replicate. The promotional materials for the System were paid for and drafted by Schmidt.

These promotional materials fraudulently overstated the profit potential of the System, misrepresented the risk involved in trading futures contracts, and misrepresented that the buy and sell signals on the System's web site would be used by Inamdar to place actual trades and that the trade history shown on the web site would reflect those trades. In addition, they omitted the material fact that Inamdar actually has an unprofitable trading record and does not personally trade the System as recommended in his personal trading accounts.

3.      By dint of this conduct, Inamdar and SKIR operated a fraud in violation of Section 4o(1)(B) 7 U.S.C. §§ 6o(1)(B) and Commission Regulation 4.41(a)(2) and (b), 17 C.F.R. § 4.41(a)(2) and (b). Further, since Schmidt aided and abetted the fraud, pursuant to Section 13(a) of the Act, he and Tradewins, violated Section 4o(1)(B) of the Act and Commission Regulations 4.41(a)(2) and (b), 17 C.F.R. § 4.41(a)(2) and (b).

4.      Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), the Commission brings this action to enjoin the unlawful acts and practices of Defendants and to bar them from engaging in the solicitation of customers in relation to any commodity futures-related activity. The Commission seeks civil monetary penalties in the amount of not more than the higher of $120,000 or triple the monetary gain to Defendants for each violation of the Act. In addition, the Commission seeks disgorgement of Defendants' ill-gotten gains, restitution to customers, and prejudgment interest.

5.      Unless enjoined by this Court, Defendants are likely to continue to engage in the unlawful acts and practices alleged in this Complaint, as more fully described below.

## II. JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which provides that whenever it shall appear to the Commission that any

2

person has engaged, is engaging, or is about to engage in any act or practice constituting a
violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the
Commission may bring an action in the proper District Court of the United States against such
person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation or
order there under.

7.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.
§ 13a-1(e), because the acts and practices alleged herein occurred in this District, among others.

8.     Unless restrained and enjoined by this Court, the Defendants are likely to
continue to engage in the acts and practices alleged in this Complaint or in similar acts and
practices, as described more fully below.

### III. THE PARTIES

**A.     Plaintiff**

9.     The Commission is an independent federal regulatory agency that is charged with
the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.*, and the regulations
promulgated thereunder.

**B.     Defendants**

10.     Stephen A. Schmidt resides in Saint James, New York 11780, and is the owner
and president of TradeWins.  Schmidt is also the principal employee or agent for TradeWins.
Schmidt was one of the respondents in *In the Matter of TradeWins Publishing Corp. et al.,*
CFTC Docket No. 02-10 (2002).  On April 14, 2002, the Commission issued an order accepting
offers of settlement from TradeWins and Schmidt and ordering them to cease and desist from
violating Sections 4o(1)(A) and (B) of the Act and Commission Regulations 4.41(a) and
4.41(b)(1)(i); to refrain from misrepresenting the risks associated with and/or the performance or

3

profits achieved by users of a commodity futures or options trading system. Moreover, the April 2002 Order prohibits TradeWins and Schmidt from using simulated trading transactions without use of the hypothetical disclosure set forth in Regulation 4.41(b)(1)(i) and clearly identifying the simulated trading transactions to which the disclosure is referring. CFTC Docket No. 02-10 (April 4, 2002) (the "April 2002 Order"). Schmidt's conduct alleged in this Complaint violates the April 2002 Order.

11.     TradeWins Publishing Corp. is located at 19 Bellemead Avenue, Smithtown, New York 11787, and is a publisher and marketer of investment related books and products, including trading systems. TradeWins' conduct alleged in this Complaint also violates the April 2002 Order.

12.     Anand K. Inamdar resides in San Diego, CA 92130-1038. At all relevant times, he was a researcher at the University of California in San Diego. Inamdar was the principal employee or agent for SKIR. He has traded personal commodity futures and securities accounts for at least five years and wrote a book *The Science of Automatic Options Profits*, based upon his experience. All his trading activity in futures and options has been for his personal account. Since approximately 2002, he has developed and promoted the System with the assistance of Schmidt. Inamdar personally posted the trades and trade signals by accessing the web site from his home or office. Inamdar received nearly $45,000 for his share of the profits for the System.

13.     Shri Krishna Investment Research Corp., located at 13517 Tiverton Rd., San Diego, CA 92130-1038, is a suspended California corporation owned by Inamdar. SKIR owns the copyright to the content of the web site, *naturaltrigger.com*.

4

## IV. FACTUAL BACKROUND

### Commission April 2002 Order

14.     On April 4, 2002, the Commission issued an order in an unrelated case accepting

offers of settlement from TradeWins Publishing, Corp. and Stephen A. Schmidt.  *In the Matter of*

*TradeWins Publishing, Corp. and Stephen A. Schmidt, Order Accepting Offers of Settlement*

*TradeWins Publishing, Corp. and Stephen A. Schmidt*, CFTC Docket No. 02-10 (April 4, 2002) .

This was identified above in paragraph 9.

15.     In its April 2002 Order, the Commission found that TradeWins and Schmidt had

violated Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B), and Commission

Regulations 4.41(a) and 4.41(b)(1)(i), 17 C.F.R. §§ 4.41(a) and 4.41(b)(1)(i).  Schmidt consented

to the entry of the Commission's Order.  Schmidt agreed to comply with the undertakings

contained within the Order.  Among the undertakings to which Schmidt agreed were the

following:

(1) [Schmidt] shall not misrepresent, expressly or by implication:

> (a) the performance, profits or results achieved by, or the results that can be
> achieved by, users, including themselves, of any commodity futures or options
> trading system or advisory service; and

> (b) the risks associated with trading pursuant to any commodity futures or options
> trading system or advisory service;

(2) [Schmidt] shall not present the performance of any simulated or hypothetical
commodity interest account, transaction in a commodity interest or series of transactions
in a commodity interest unless such performance is accompanied by the following
statement, as required by 17 C.F.R. § 4.41(b):

In doing so, [Schmidt and TradeWins] shall clearly identify those hypothetical or
simulated performance results that were based, in whole or in part, on hypothetical or
simulated trading results;

5

(3) [Schmidt] shall not make any representations of financial benefits associated with any commodity futures or options trading system or advisory service without first disclosing, prominently and conspicuously, that futures and options trading involves high risks with the potential for substantial losses;

(4) [Schmidt] shall not represent, expressly or by implication:

> (a) the performance, profits or results achieved by, or the results that can be achieved by, users, including themselves, of any commodity futures or options trading system or advisory service;
>
> (b) the risks associated with trading pursuant to any commodity futures or options trading or advisory service ....

unless (i) they possess and rely upon a reasonable basis substantiating the representation at the time is made; and (ii) for two years after the dissemination of any such representation, they maintain all advertisements and promotional brochures containing such representation and all materials that were relied upon or that otherwise substantiated such representation at the time it was made, and make such materials immediately available to the Division for inspection and copying upon request.

### The Natural Trigger Point System

16.    From July 2002 through at least August 2003, the Defendants promoted the System and the online membership web site, *www.naturaltrigger.com*, that issued specific buy and sell trading recommendations concerning commodity futures to System subscribers. Schmidt was responsible for the preparation and dissemination of the promotional material used to promote the System.

17.    The promotional materials for the System were paid for, and drafted by, Schmidt. These promotional materials fraudulently overstated the profit potential of the System, misrepresented the risk involved in trading futures contracts, and misrepresented that the buy and sell signals on the System's web site would be used by Inamdar to place actual trades and that the trade history shown on the web site would reflect those trades.  In addition, they omitted the material fact that Inamdar actually has an unprofitable trading record and does not trade the System in his personal trading accounts.

6

18.    The promotional piece was distributed through direct mail by Schmidt and TradeWins. It consisted of a brochure with a cover letter purportedly from Inamdar to potential customers. The letter was signed "Dr. K. Anand." Inamdar reviewed and partially approved the brochure drafted by Schmidt. Sometime between June and September 2002, after Tradewins mailed the promotional material, Inamdar became aware of the cover letter sent out by Schmidt under Inamdar's name. Inamdar did not direct or request that the use of the cover letter be discontinued.

19.    The promotional piece operated as a fraud in the following respects, among others: first, it represented that the System is highly accurate and conveyed that it resulted in over 99% winning trades. Second, it implied that Inamdar personally followed the System's buy and sell signals and that the "track record" posted on the web site was based on actual trading by Inamdar. Third, it misrepresented the risks of trading futures contracts. Finally, it failed to disclose that, in truth and in fact, Inamdar has experienced substantial losses in his personal trading accounts and did not personally follow the System as recommended.

### Misrepresentations About Profitability

20.    The cover letter included as part of the promotional piece stated that the System "is a system for high accuracy (99.02%) and high profit trading (consistent profit returns of over 1000%)" and invited people to subscribe to the web site where they would have access to Inamdar's "actual real-time signals" so that they could "follow along with me as I trade."

21.    The brochure, included as part of the promotional piece, claimed that Inamdar, as a result of his scientific background, was able to pinpoint with over 99% accuracy the direction of the market. The brochure claimed that the System generated annual results of over 1000% for

7

over five years and that, over a two-year period, the "System produced 100% winning trades and turned every $2,000 into $154,162 without pyramiding!"

22.     The web site claimed that the System is "historically accurate to better than 70%, but more importantly keeps risks to a minimum and when combined with a suitable option strategy not only improves the statistics for the percentage of winners (greater than 90%), but also greatly enhances the profit potential of trades by several fold."

23.     In reality most, if not all, of those customers who actually traded using the System experienced substantial losses.  Clients or prospective clients would find this information important to their decision of whether to purchase the System.

24.     Pursuant to the April 2002 Order, Schmidt knew that he could not make any representation about profits that could be achieved by users of a trading system unless he possessed and relied upon a reasonable basis for making the representation.  Schmidt had no reasonable basis to make the false profitability claims described in paragraphs 20 and 21. Therefore, Schmidt knew that his inclusion of these profitability claims in the promotional materials was wrongful.

## Misrepresentations About Risks of Trading Futures

25.     The promotional materials  minimized the risk of trading futures and options contracts.  For example, the promotional materials described the risk involved  with phrases such as "eliminates virtually every risk", "the profits add up without the risks!" and "Ultimately, even your limited risk disappears."

26.     In reality, futures and options trading involves substantial risk of loss.  Clients or prospective clients would find this information important to their decision of whether to purchase the System.

8

27.     Pursuant to the April 2002 Order, Schmidt knew that futures and options trading involved substantial risk.  Pursuant to the Commission Order, Schmidt knew that he could not make any representation about risks associated with trading futures or options unless he possessed and relied upon a reasonable basis for making the representation.  Schmidt had no reasonable basis to claim that the System minimized risk.  Therefore, Schmidt knew that his inclusion of these claims of minimal risk in the promotional materials was wrongful.

### Misrepresentations that The System's Trade History Would Reflect Actual Trades Placed by Inamdar

28.     The promotional materials and the System's web site conveyed the misleading impression that the trade history would reflect Inamdar's actual trading activity. For example, the cover letter accompanying the promotional brochure contained the statement "And I've included access to my actual real-time signals.  I'll be posting daily trigger prices, buy and sell points and trade adjustments.  So you'll be able to follow along with me as I trade."  The promotional brochure stated, "Dr. K. Anand has consented to reveal his personal trading method, the Natural Trigger Point System."

29.     In fact, the "track record" posted on the web site was based on simulated or hypothetical trading and not actual trading by Inamdar.  Clients or prospective clients would find this information important to their decision of whether to purchase the System.  Further, the track record was not accompanied by the prominent and conspicuous disclosure required by Regulation 4.41(b)(1)(i) and the April 2002 Order.

30.     Pursuant to the April 2002 Order, Schmidt knew simulated or hypothetical performance results cannot be represented as actual trading results.  Schmidt had no reasonable basis to claim that Inamdar was posting actual, as opposed to simulated or hypothetical, trading results on the web site.  Therefore, Schmidt knew that his inclusion of representations in the

9

promotional materials that the web site would post Inamdar's actual trading results was wrongful.

### Failure to Disclose that Inamdar
### did not Follow the System in his Personal Trading
### and that Inamdar's Personal Trading Resulted in Substantial Losses

31.     The promotional materials and the System's web site conveyed the misleading impression that Inamdar would follow the buy and sell signals on the System's web site and use them in his trading.  For example, the cover letter accompanying the promotional brochure contained the statement "And I've included access to my actual real-time signals.  I'll be posting daily trigger prices, buy and sell points and trade adjustments.  So you'll be able to follow along with me as I trade."  The promotional brochure stated, "Dr. K. Anand has consented to reveal his personal trading method, the Natural Trigger Point System."

32.     In reality, Inamdar did not follow the System's buy and sell signals.  The promotional materials did not disclose the material fact that, in his personal trading, Inamdar did not follow the System's buy and sell signals.  The promotional materials also did not disclose that Inamdar's actual trading had resulted in losses of over $115,000 during the three years prior to promotion of the System.

33.     Clients or prospective clients would find the fact that Inamdar didn't even follow the System's trading signals as posted on the website important to their decision of whether to purchase the System.  In light of the claims of substantial profits that could be made trading the System, clients or prospective clients would also find the fact that Inamdar sustained substantial losses on the few occasions that he actually traded his System important to their decision of whether to purchase the System.

10

## V.   VIOLATIONS OF COMMODITY EXCHANGE ACT

### COUNT I
### VIOLATION OF SECTION 4o(1)(B) OF THE ACT, 7 U.S.C. § 6o(1)(B) AND
### COMMISSION REGULATION 4.41(a)(2), 17 C.F.R. § 4.41(a)(2):
### FRAUD BY A COMMODITY TRADING ADVISOR

34.     Paragraphs 1 through 33 are realleged and incorporated herein by reference.

Section 1a(6) of the Act, 7 U.S.C. § 1a(6) defines a CTA as any person who, inter alia, for

compensation or profit, engages in the business of advising others, either directly or through

publications, writings, or electronic media, as to the value of or the advisability of trading in any

contract of sale of a commodity for future delivery made or to be made on or subject to the rules

of a contract market.

35.     Section 4o(1)(B) of the Act makes it unlawful for a CTA, by use of the mails or

any means or instrumentality of interstate commerce, directly or indirectly, to engage in any

transaction, practice, or course of business which operates as a fraud or deceit upon any client or

prospective client.

36.     Commission Regulation 4.41(a)(2) makes it unlawful for a CTA, or any principal

thereof, to advertise in a manner that involves any transaction, practice or course of business that

operates as a fraud or deceit upon any client or any prospective client.

37.     Through the conduct described in Paragraphs 14 through 33 above, Defendant

Inamdar, while acting as a CTA, by using the mails and the Internet) engaged in transactions,

practices or courses of business that operated as a fraud or deceit upon clients or prospective

clients, in violation of Section 4o(1)(B) of the Act.

38.     Through the conduct described in paragraphs 1 through 33 above, Defendant

Inamdar, while acting as a CTA, included fraudulent representations in his advertising and

11

promotional material, and in his website, in violation of section 4.41(a)(2) of the Commission's Regulations.

39.     Each fraudulent misrepresentation or omission made by Inamdar in his web sites, advertising and promotional material, including those specifically alleged herein, constitutes a separate and distinct violation of Section 4o(1)(B) of the Act and Regulation 4.41(a)(2).

40.     At all times during the relevant period, Inamdar was an employee or agent for SKIR, and his actions as alleged in Paragraphs 14 through 33 above were undertaken within the scope of that employment or agency.

41.     SKIR is therefore liable as a principal for the foregoing acts of its employee or agent, Inamdar, by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

42.     Based on his conduct alleged in paragraphs 14 through 33 above, Defendant Schmidt willfully aided, abetted, counseled, commanded, induced or procured the commission of, violations of Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B) and Regulation 4.41(a)(2) by Defendant Inamdar, or acted in combination or concert with Defendant Inamdar in such violations and is therefore liable for such violations pursuant to Section 13(a) of the Act.

43.     At all times during the relevant period, Schmidt was the principal employee or agent for TradeWins, and his actions as alleged in Paragraphs 14 through 33 above were undertaken within the scope of that employment or agency.

44.     TradeWins is therefore liable as a principal for the foregoing acts of its employee or agent, Schmidt, by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

45.     Each act of aiding and abetting is a separate and distinct violation of the Act.

## COUNT II

### VIOLATION OF COMMISSION REGULATION 4.41(b), 17 C.F.R. § 4.41(b): FAILURE TO PROVIDE DISCLOSURE REGARDING LIMITATIONS OF HYPOTHETICAL TRADING RESULTS

46.    Paragraphs 1 through 33 are realleged and incorporated herein by reference.

47.    Regulation 4.41(b) makes it unlawful for any person to present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a commodity pool operator, CTA, or any principal thereof, unless such performance is accompanied by a prescribed disclosure concerning the limitations of simulated or hypothetical trading results.

48.    Through the conduct described in Paragraphs 14 through 33 above, Inamdar, while acting as a CTA, presented the performance of simulated and hypothetical commodity interest accounts without prominently including the required disclosure, in violation of Section 4.41(b) of the Regulations.

49.    Each failure to include the required hypothetical disclosure, including those specifically alleged herein, constitutes a separate and distinct violation of Regulation 4.41(b).

50.    At all times during the relevant period, Inamdar was an employee or agent for SKIR, and his actions as alleged in Paragraphs 14 through 33 above were undertaken within the scope of that employment or agency.

51.    SKIR is therefore liable as a principal for the foregoing acts of its employee or agent, Inamdar, by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

52.    Based on his conduct alleged in paragraphs 14 through 33, above, Defendant Schmidt willfully aided, abetted, counseled, commanded, induced or procured the commission of, violations of Regulation 4.41(b) by Defendant Inamdar, or acted in combination or concert

13

with Defendant Inamdar in such violations and is therefore liable for such violations pursuant to Section 13(a) of the Act.

53.    At all times during the relevant period, Schmidt was the principal employee or agent for TradeWins, and his actions as alleged in Paragraphs 14 through 33 above were undertaken within the scope of that employment or agency.

54.    TradeWins is therefore liable as a principal for the foregoing acts of its employee or agent, Schmidt, by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

55.    Each act of aiding and abetting is a separate and distinct violation of the Act.

### COUNT III
### VIOLATION OF THE COMMISSION'S APRIL 2002 ORDER
### AND SECTION 6c OF THE ACT

55.    Paragraphs 1 through 33 are realleged and incorporated herein by reference.

56.    On April 4, 2002, the Commission issued an Order pursuant to Sections 6(c) and 6(d) of the Act, 7 U.S.C. §§ 9, 13b and 15.  The Order directed TradeWins and Schmidt to cease and desist from violating Sections 4o(1)(A) and (B) of the Act and Commission Regulations 4.41(a) and 4.41(b)(1)(i).

57.    Pursuant to Section 6c of the Act, 7 U.S.C. § 9, the Commission may bring an action for violations of a Commission order.

58.    By virtue of the conduct described in paragraphs 14 through 33, Schmidt and TradeWins have engaged in acts and practices in violation of the Commission's April 2002 Order, and have thereby violated Section 6c of the Act, 7 U.S.C. § 9, 15 (2002).

59.    Each act by Schmidt and TradeWins in violation of the Order, including those specifically alleged herein, constitutes a separate and distinct violation of Section 6c of the Act.

14

## VI.  RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section

6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.      Enter an Order finding Defendants Inamdar, SKIR, Schmidt, and

TradeWins, liable for violating Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B)

and Commission Regulations 4.41(a)(2) and 4.41(b);

B.      Enter an Order finding Defendants Schmidt and TradeWins liable for

violating the Commission's April 2002 Order, and Section 6c of the Act, 7 U.S.C.

§ 9, 15;

C.      Enter a preliminary and a permanent injunction prohibiting the Defendants

and any other person or entity associated with them, or any successor thereof,

from engaging in conduct violative of the provisions of the Act and Regulations

as alleged in this Complaint, and from engaging in any activity relating to

commodity futures or options on commodity futures, including but not limited to,

soliciting, accepting or receiving funds, revenue or other property from any

person, giving advice for compensation, or soliciting prospective customers,

related to the purchase and sale of any commodity futures contracts or options on

commodity futures contracts;

D.      Enter an Order directing the Defendants and any successors thereof, to

disgorge, pursuant to such procedure as the Court may order, all benefits received

from the acts or practices which constituted violations of the Act, as described

herein, and interest thereon from the date of such violations;

E.    Enter an Order directing the Defendants to pay a civil monetary penalty in the amount of not more than the higher of $120,000 or triple the monetary gain to Defendants for each violation of the Act or regulations;

F.    Grant ancillary remedial relief, including but not limited to, an accounting and restitution, and prejudgment interest;

G.    Enter an order pendente lite that freezes Defendants' assets, permits Commission staff to inspect Defendants' records and prohibits Defendants from destroying any records or documents as more fully set forth in the Plaintiff's Motion for a Statutory Restraining Order; and

I.    Grant such other and further equitable or remedial ancillary relief as the Court may deem appropriate.

Respectfully submitted,

Catherine R. Fuller, Senior Trial Attorney
Rosemary Hollinger, Associate Director
Attorneys for Plaintiff
Commodity Futures Trading Commission
525 W. Monroe Street
Suite 1100
Chicago IL 60661
Tel:  (312) 596-0548 (Fuller)
Fax:  (312) 596-0714 (Facsimile)


LOCAL COUNSEL:
Joseph Rosenberg (JR 5255)
Stephen R. Morris (SM 9515)
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
646 746-9765 (Rosenberg)
646 746-9763 (Morris)
646 746-9940 (facsimile)

16